UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

-vs-                                                                    Case No. 6:06-cr-202-Orl-18KRS

WILFREDO G. MADERA

_____

## ORDER

This cause came before the Court upon Defendant's Motion to Dismiss Indictment and Memorandum of Law in Support Thereof (Doc. 29, filed January 5, 2007), to which the Government responded in opposition. (Doc. 32, filed January 10, 2007.) Oral argument was held before the Court on January 11, 2007. Defendant Wilfredo G. Madera ("Defendant") is charged in an indictment with one count of failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a) and the Walsh Act. After reviewing the motions and memoranda provided by both the Defendant and the Government, and listening to oral argument on both sides, the Court **DENIES** the Motion to Dismiss.

### I. BACKGROUND OF THE WALSH ACT

The Adam Walsh Child Protection and Safety Act of 2006 ("the Act"), Pub. L. No. 109-248, was enacted on July 27, 2006. Title I of the Act, entitled the Sex Offender Registration and Notification Act ("SORNA"), creates a national sex offender registry law. SORNA, in addition to defining the term "sex offender" and addressing the various tiers of sex offender status, see 42 U.S.C. § 16911, also requires every jurisdiction to maintain a sex offender registry conforming to

the requirements of SORNA. See 42 U.S.C. § 16912. The information to be provided by the sex offender for the registry, at a minimum, includes: name and aliases; Social Security number; residence; place of employment and/or school; and vehicle information. 42 U.S.C. § 16914(a)(1)-(7). Furthermore, the jurisdiction must ensure that, again, at a minimum, the following information is included in the registry for the sex offender: physical description; criminal history, including the text of the particular law for which the registration is required; current photograph; fingerprints and palm prints; DNA sample; and a photocopy of a driver's license or identification card. 42 U.S.C. § 16914(b)(1)-(8). Certain information about the sex offender is also mandated to be published on an internet website (exempting some items, such as the sex offender's Social Security number). See 42 U.S.C. § 16918. Each jurisdiction's website is also required to include "all field search capabilities needed for full participation in the Dru Sjodin National Sex Offender Public Website," a website that shall be maintained by the Attorney General. See 42 U.S.C. §§ 16918, 16920.

Most pertinent to this case, SORNA also delineates when and how a sex offender should register under the Act:

> (a) In general
>
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> (b) Initial registration
>
> The sex offender shall initially register–
>
>> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this title.

42 U.S.C. § 16913.

Additionally, SORNA creates new federal crimes for those individuals who, among other things, fail to register despite being required to do so:

(a) In general—Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

As of the date of this order, the Attorney General has not exercised the authority delegated to him by Congress "to specify the applicability of the requirements of this [the Act] to sex offenders convicted before July 27, 2006." 42 U.S.C. § 16913(d).

## II. DEFENDANT'S BACKGROUND AND ARREST

According to the criminal complaint, Defendant was convicted in the State of New York on November 17, 2005, of sexual abuse in the second degree, a misdemeanor, under New York Penal Code § 130.60. (Compl. ¶ 3.) Defendant was sentenced to six years' probation for this conviction, but was not incarcerated. (Id. ¶ 4.) Defendant signed a sexual offender registration form from New York, dated May 1, 2006, stating: "If you move to another state you must register as a sex offender within 10 days of establishing residence." (Id. ¶ 4.) Upon moving to Florida, Defendant, on June

6, 2006, was issued a Florida driver's license with an address in West Palm Beach, Florida. (Id. ¶ 5.) Defendant was arrested on October 23, 2006, for failing to register as a sex offender in violation of 18 U.S.C. § 2250. (Doc. 29 at 2.) Thereafter, Defendant was indicted by a grand jury on November 1, 2006 for "knowingly and unlawfully fail[ing] to register and update a registration as required by [SORNA]," in violation of 18 U.S.C. § 2250. (Doc. 13 at 2.)

## III. DISCUSSION

Defendant alleges that SORNA's registration requirements, as well as 18 U.S.C. § 2250, are unconstitutional under the following provisions of the United States Constitution: (1) the Non-Delegation Doctrine, Art. I, § 1; (2) the Ex Post Facto Clause, Art I, § 9, cl. 3; (3) the Due Process Clause of the Fifth Amendment; and (4) the Commerce Clause, Art. I, § 8, cl. 3. This is a matter of first impression before a United States District Court. For the reasons outlined below, the Court finds that the Act is **constitutional**, and that it is **retroactive** as of the day it was enacted on July 27, 2006.

### A. The Act Does Not Violate the Nondelegation Doctrine

Defendant argues that Congress impermissibly delegated the decision of whether the Act should be applied retroactively to the Attorney General. See 42 U.S.C. § 16913(d). In the alternative, Defendant also argues that if the retroactivity decision were properly delegated to the Attorney General, the Attorney General has still not decided whether the application of the Act is retroactive, and therefore the prosecution of Defendant under the Act is premature.

The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const., Art. I, § 1. This "nondelegation doctrine" is an integral part of the separation of powers of our system of government. However, the Supreme Court has

stated that "the separation-of-powers principle, and the nondelegation doctrine in particular, do not prevent Congress from obtaining the assistance of its coordinate Branches." Mistretta v. United States, 488 U.S. 361, 372 (1989). The rationale behind this approach was first explained in an opinion by Chief Justice Taft: "In determining what [Congress] may do in seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the governmental co-ordination." J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 406 (1928). Therefore, "[s]o long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" Mistretta, 488 U.S. at 372 (quoting J. W. Hampton, Jr. & Co., 276 U.S. at 409).

In the history of the Supreme Court, only twice has the requisite "intelligible principle" been found to be lacking in challenged statutes, and both occurred in the same year: Panama Refining Co. v. Ryan, 293 U.S. 388 (1935) and A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935).[1] See Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 474 (2001). Since that point the Supreme Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." Id. at 474-75 (internal quotation marks omitted); see also Mistretta, 488 U.S. at 373 ("[W]e have upheld, again without deviation, Congress' ability to delegate power under broad standards.")

---

[1] Defendant cites to both these cases, and *only* these cases, to support his argument for violation of the nondelegation doctrine. As the Supreme Court pointed out in Whitman, regarding the two statutes that lacked the "intelligible principle," "one . . . provided literally no guidance for the exercise of discretion, and the other . . . conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring fair competition." Whitman, 531 U.S. at 474 (internal quotation marks omitted).

This Court will not interrupt over 70 years of Supreme Court precedent upholding congressional delegation. Congress, in this instance, stated that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders . . . who are unable to comply with [the registration requirements]." Congress is not abrogating its legislative authority, in violation of the Constitution, through this statute.

Further, the determination of whether a law is retroactive is in the capable hands of either one of two branches of government: Congress or the courts. Congress, in stating that the Attorney General has the authority to determine how sex offenders convicted before July 27, 2006, should comply with SORNA registration, is merely giving the Attorney General an advisory role to the courts. The Supreme Court has explicitly set out an analysis that is to be undertaken in the determination of whether a law is retroactive. "We first look to 'whether Congress has expressly prescribed the statute's proper reach,' and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying" normal rules of construction. Fernandez-Vargas v. Gonzales, 126 S. Ct. 2422, 2428 (2006) (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994)). "If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment.'" Id. (quoting Landgraf, 511 U.S. at 278). Only if the answer to that question is yes, is the presumption against retroactivity then applied, "by construing the statute as inapplicable to the

event or act in question owing to the `absen[ce of] a clear indication from Congress that it intended such a result.'" Id. (quoting I.N.S. v. St. Cyr, 533 U.S. 289, 316 (2001)).

In the present case, this Court finds that the statute is retroactive as of the day it was passed on July 27, 2006. Congress did not specifically prescribe the statute's reach, so it is therefore up to this Court to apply the normal rules of construction. The Court must determine whether the statute would have retroactive effect, that is, "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf, 511 U.S. at 280. Additionally, "the judgment whether a particular statute acts retroactively should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." I.N.S. v. St. Cyr, 533 U.S. at 321 (internal quotation marks omitted). Defendant signed a sexual offender registration form from New York, dated May 1, 2006, which stated: "If you move to another state you must register as a sex offender within 10 days of establishing residence." (Compl. ¶ 4.) Defendant was therefore on fair notice that he was required to register as a sex offender in Florida, whether under the New York guidelines or under SORNA. No new duties were imposed on Defendant by the enactment of SORNA. Neither did SORNA impair any rights Defendant possessed when he failed to register in Florida. All these factors point towards the conclusion that this Court comes to: the Act, as passed on July 27, 2006, is retroactive.

## B. The Act Does Not Violate the Ex Post Facto Clause

Defendant argues that the crime alleged in the indictment purports to punish Defendant for acts committed prior to the passage of the Act, which is a violation of the Ex Post Facto Clause of the Constitution. Defendant alleges that the qualifying sex offense conviction occurred on

November 17, 2005, after which he traveled to Florida, and only after both these events occurred did Congress pass the Act and accompanying crime set forth in 18 U.S.C. § 2250.

The Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const., Art. I, § 9, cl. 3.[2] Since the enactment of the Constitution, the purpose of the Ex Post Facto Clause has been to prevent government from enacting statutes with "manifestly unjust and oppressive" retroactive effects. Calder v. Bull, 3 U.S. (3 Dall.) 386, 391 (1798) (Chase, J.). Throughout the last two centuries, this constitutional prohibition has come to apply "only to penal statutes which disadvantage the offender affected by them." Collins v. Youngblood, 497 U.S. 37, 41 (1990).[3] As a result, the inquiry today is one in which this Court must "ascertain whether [Congress] meant the statute to establish 'civil' proceedings." Smith v. Doe, 538 U.S. 84, 92 (2003) (quoting Kansas v. Hendricks, 521 U.S. 346, 361 (1997)). "If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [Congress's] intention to deem it civil." Id. (internal quotation marks omitted). Furthermore, because of a deference to Congress's stated intent, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. (internal quotation marks omitted).

---

[2]Article 1, § 10, cl. 1 of the Constitution forbids any state from passing an ex post facto law. Each of the two clauses, one dealing with federal prohibition, and one dealing with state prohibition, is analyzed in the same fashion. See generally Garner v. Bd. of Pub. Works, 341 U.S. 716, 733-34 (1951).

[3]The Supreme Court outlined a thorough history of the Ex Post Facto Clause in Collins v. Youngblood, 497 U.S. 37, 41-52 (1990).

Fortunately for this Court, the Supreme Court recently, for the first time, considered a claim that a sex offender registration and notification law constituted retroactive punishment forbidden by the Ex Post Facto Clause. See id. The Alaska law in question in Smith v. Doe is strikingly similar to SORNA, including its requirements and how the information is disseminated on the internet. See id. at 89-91; Alaska Stat. §§ 12.63.010 *et seq.* After considering the statute's text and structure, the Supreme Court concluded that "the intent of the Alaska Legislature was to create a civil, nonpunitive regime." Smith v. Doe, 538 U.S. at 96. The same result shall apply here. As noted in Smith v. Doe, "an imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.'" Id. at 93 (quoting Kansas v. Hendricks, 521 U.S. 346, 363 (1997)). Additionally, as in both Smith v. Doe and Hendricks, "[n]othing on the face of the statute suggests that the legislature sought to create anything other than a civil ... scheme designed to protect the public from harm." Id. (quoting Hendricks, 521 U.S. at 361). In fact, Congress stated the purpose of the Act in its opening stanza: "In order to protect the public from sex offenders and offenders against children . . . ., Congress in this chapter establishes a comprehensive national system for the registration of [sex] offenders." 42 U.S.C. § 16901. Considering the Supreme Court's prior ruling on this type of law, as well as the statute itself, this Court finds that the Act (and SORNA within it) is a "civil, nonpunitive" law.

The above determination is only the first question in deciding whether a law violates the Ex Post Facto Clause, however. If a law, despite being civil and nonpunitive on its face, is so punitive in purpose or effect as to negate the intent of the legislature, then it will be in violation of the Constitution. The Smith v. Doe Court came to the conclusion that the "effects of the [Alaska statute did not] negate Alaska's intention to establish a civil regulatory scheme." Smith v. Doe, 538 U.S.

at 105. Again, the similarities of the Act in question and Alaska's statute lead this Court to the same conclusion to which the Supreme Court arrived. Just as in Smith v. Doe, the regulatory scheme set forth by the Act: has not been "regarded in our history and traditions as a punishment;" does not "impose[] an affirmative disability or restraint;" does not "promote[] the traditional aims of punishment;" has a "rational connection to a nonpunitive purpose;" and is not "excessive with respect to this [nonpunitive] purpose." Id. at 97 (applying the Mendoza-Martinez factors to establish whether the law violates the Ex Post Facto Clause). As the Supreme Court noted, the "[m]ost significant factor in [the] determination that the statute's effects are not punitive" is "[t]he Act's rational connection to a nonpunitive purpose." Id. at 102 (internal quotation marks omitted). Again, the same applies here: Congress has put forth the legitimate nonpunitive purpose of public safety.[4] This rationale effectively makes the Act a notice statute, and nothing more.

For the foregoing reasons, and relying heavily on the Supreme Court's recent decision in Smith v. Doe, this Court holds that the Act does not violate the Ex Post Facto Clause.

## C. The Act Does Not Violate the Due Process Clause of the Fifth Amendment

Defendant argues that, because SORNA fails to provide for a hearing or petition process either prior to the publication of his name on the sex offender registry or prior to being compelled

---

[4] Defendant argues in his Motion to Dismiss that Congress did not come to a finding (like Alaska) that sex offenders have a high risk of recidivism or that public notification would promote public safety, and this factor weighs in favor of finding a violation of the Ex Post Facto Clause. However, the risk of recidivism among sex offenders is oft cited, even in Supreme Court jurisprudence: "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." McKune v. Lile, 536 U.S. 24, 33 (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 27 (1997)). Defendant's argument that Congress did not specifically cite the high risk of recidivism does not hold water.

to comply with the reporting conditions, the statute is a violation of both the procedural and substantive components of the Due Process Clause of the Fifth Amendment to the Constitution.

The Due Process Clause of the Fifth Amendment to the Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has expressly held that not offering a sex offender a hearing to determine his current dangerousness prior to his name being published in a sex offender registry is not a violation of procedural due process. See Conn. Dept. of Pub. Safety v. Doe, 538 U.S. 1, 4-8 (2003). The Supreme Court determined that because the sex offender registry in question required *all* sex offenders to register, there was no need for an inquiry into dangerousness levels of the offenders. Id. at 7-8. Much as Connecticut's law in question was held to not violate procedural due process, so too the Act in question does not violate procedural due process, as it requires all sex offenders to register under SORNA.

The notion behind substantive due process is that certain unenumerated liberties must be protected by the courts. In Connecticut Department of Public Safety v. Doe, the Supreme Court specifically chose not to address the question of substantive due process with regard to sex offender registries because it was not properly before the Court. However, the Eleventh Circuit, along with several other circuits, have held expressly that substantive due process does not invalidate sex offender registration statutes. Doe v. Moore, 410 F.3d 1337, 1345 (11th Cir. 2005); see also Doe v. Tandeske, 361 F.3d 594, 597 (9th Cir. 2004) ("[P]ersons who have been convicted of serious sex offenses do not have a fundamental right to be free from the registration and notification requirements set forth in the Alaska statute."); Gunderson v. Hvass, 339 F.3d 639, 643 (8th Cir. 2003) (holding that the sex offender registration statute in question did not infringe the fundamental

right to a presumption of innocence). Keeping in line with the Eleventh Circuit, as well as her sister Circuits, this Court finds that the Act in question does not violate substantive due process because it does not infringe upon any fundamental right.

### D. The Act Does Not Violate the Commerce Clause

Lastly, Defendant argues that 18 U.S.C. § 2250 is unconstitutional on its face because it violates the Commerce Clause of the Constitution.

The Constitution delegates to Congress the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes." U.S. Const., art. I, § 8, cl. 3. The Supreme Court has defined three categories of activity that Congress may regulate pursuant to its Commerce Clause authority: (1) "the use of channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities having a substantial relation to interstate commerce." United States v. Lopez, 514 U.S. 549, 558-59 (1995).

Congress's purpose in passing the Act was to protect the public from sex offenders. See 42 U.S.C. § 16913. The ability to track sex offenders as they move from state to state, and continue to identify these sex offenders in their new residences, is enough to fall under the veil of the Commerce Clause. As the Supreme Court stated in one of its most recent Commerce Clause cases:

> [E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce. We have never required Congress to legislate with scientific exactitude. When Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class.

Gonzales v. Raich, 545 U.S. 1, 17 (2005) (citation omitted) (internal quotation marks omitted). Furthermore, only a "rational basis" must exist for concluding that the activity legislated

substantially affects interstate commerce. <u>Id.</u> at 22. This rational basis test is clearly met through Congress's desire to track sex offenders as they move between states, in order to promote the public safety. The Act, therefore, does not violate the Commerce Clause.

## IV. CONCLUSION

This Court finds that the Adam Walsh Child Protection and Safety Act of 2006 is constitutional as written. Additionally, the Court holds that the Act is **retroactive** as of the day it was passed, and therefore applies to Defendant. Accordingly, Defendant's Motion to Dismiss is **DENIED**.

DONE and ORDERED in Orlando, Florida this 16 of January, 2007.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Wilfredo G. Madera